IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENJAMIN DAVIS,
      Plaintiff,

v.                                         CIVIL NO. WDQ-09-1936

W. RODEHEAVER, *et al.*,
      Defendants.

\*\*\*\*\*\*

MEMORANDUM OPINION

On July 6, 2009, the Court received Plaintiff Benjamin Davis' civil rights complaint seeking compensatory damages and injunctive relief pursuant to 42 U.S.C. § 1983. Davis alleges he was subjected to excessive force and denied medical care. Defendants Captain Mark Tyler, Lt. Donna Durst, Lt. James Llewellyn, Sgt. Robert Cross, C.O. II William Rodeheaver and C.O. II Nicholas Soltas have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

I.    Background

Plaintiff states that on June 22, 2009, he was informed by correctional employees that another inmate had been assigned to occupy his disciplinary segregation cell with him. Plaintiff asked to speak to a supervisor because he did not want a cellmate. Davis Opp., Ex. E (Benjamin Davis Decl., Jan. 18, 2010). Plaintiff told the officers he did not want to share a cell with anyone who was not a Muslim like himself and that he feared the cellmate was a member of violent gang that had threatened Plaintiff in the past. *Id*. After expressing these concerns to the officers, Plaintiff was directed to be handcuffed to allow the other inmate to enter his cell. *Id*.

1

Plaintiff avers that Llewellyn "became belligerent," used "racial slurs," and stated that "he did not care if [Plaintiff and the new cellmate] killed each other." Llewellyn told Plaintiff that "he was getting a cell buddy or [the officers] were going to 'F*** [Plaintiff] up." *Id.* A few minutes later Llewellyn opened the food slot of Plaintiff's cell and sprayed mace into the cell. *Id.* The cell door was then opened and a team of officers entered to effect a cell extraction. *Id.* Plaintiff states he was struck in the body and fell to the floor, and that his head was grabbed and twisted, causing him to turn onto his side while officers cuffed his hands behind his back and forced his ankles into leg shackles. *Id.* Plaintiff states that the officers then began punching his head, body and face. *Id.* Plaintiff states that Soltas grabbed his testicles while Rodeheaver repeatedly punched Plaintiff in the nose and right eye. *Id.* Plaintiff was then dragged out of the cell and taken to the the medical department where they "refused" to treat him other than to have him wash the mace off his face. *Id.*

Prison records are largely consistent with Plaintiff's account. They reflect that on June 22, 2009, at approximately 5:40 p.m. Plaintiff refused a lawful order from correctional staff to accept a cellmate.[1] Paper No. 24, Ex. 1. Plaintiff also refused orders to be handcuffed so that the inmate could be placed in his cell. Llewellyn and Durst spoke with Plaintiff in an effort to gain his compliance with the orders to be handcuffed and to accept a cell mate. *Id.* Tyler also attempted to secure Plaintiff's compliance. *Id.* Plaintiff refused the orders to be handcuffed. *Id.* Tyler ordered a cell extraction which was approved by Chief of Security Bishop. *Id.* Llewellyn then applied four bursts of pepper spray into Plaintiff's cell. *Id.* The first three were ineffective. *Id.* Each time pepper spray was sprayed into Plaintiff's cell the feed up slot door would be

---

[1] Defendants have provided to the Court a DVD of the taped cell extraction. Paper No. 24, Ex. 2. The Court did not view the video as there is no evidence that it was provided to Plaintiff. Defendants noted they would make arrangements for Plaintiff to review the tape, if he so requested. No information has been provided to the Court as to whether Plaintiff requested or was granted an opportunity to view the tape. Moreover, Defendants concede that the

closed and Plaintiff ordered to be cuffed. *Id*. Plaintiff continued to refuse the order and the cell door was opened for the extraction team to enter the cell. *Id*.

McMillan held the shield as the first officer to enter the cell. Plaintiff charged, causing McMillan to fall to the cell floor. *Id*. Cross then entered the cell and grabbed Plaintiff's lower torso while Rodeheaver grabbed Plaintiff's upper torso. Plaintiff was knocked to the ground face down. *Id*. Plaintiff continued resisting and thrashing on the floor. *Id*.

After Plaintiff was restrained and cuffed he was taken to the medical department, examined by medical staff, and permitted to shower. *Id*. Moderate swelling on the right side of his face, nose, and lip were observed with bloody drainage coming from his nose. *Id*. No broken or missing teeth were noted.[2] No other injuries were observed. Plaintiff was treated for exposure to pepper spray and provided ice for the swelling. A referral was provided for Plaintiff to see the physician the following day and for an x-ray of Plaintiff's face. The x-ray was taken and showed no evidence of fracture. *Id*., p. 44, 60, 69-70. Plaintiff was evaluated by the physician on June 23, 2009, who noted "micro hemorrhage of the right eye, periorbital swelling with tenderness on the right, right eye lid swelling, [and] photophobia of the right eye." Paper No. 26, Ex. C. Abrasions were noted on Plaintiff's head, and head trauma was also noted. He was given ibuprofen and A&D ointment. *Id.* Davis filed a complaint with prison officials, who concluded that the various accounts of the extraction and Davis's injuries were consistent with the guards' contention that Davis's was injured in a routine—albeit necessarily violent—cell

---

tape is incomplete with the first minute having been inadvertently blacked out.
[2] In his opposition, Plaintiff states that the nurse who provided his initial evaluation rushed through the evaluation because she is related to one of the officers involved in the altercation. As evidence of this alleged bias, Plaintiff notes that it was error to find that he had no missing teeth, as he states he is missing one front tooth. Plaintiff does not indicate whether this tooth was knocked out as a result of the cell extraction. Further, the following day, Plaintiff was evaluated by a physician. Plaintiff made no complaints of teeth/gum pain and it was noted that he had "normal teeth and gums." Paper No. 25, Attachment.

extraction, rather than by the guards' malicious use of force. *Id*.

As a result of the incident, Plaintiff was charged with an inmate rule infraction for refusing to follow direct orders and refusing to accept the housing assignment. An adjustment hearing was held on June 25, 2009. Plaintiff was found guilty of the charges and sentenced to 30 days of disciplinary segregation. *Id*. p. 41, 55.

On July 6, 2009, Plaintiff filed this Complaint. Paper No. 1. On January 13, 2010, Defendants moved to dismiss or, in the alternative, for summary judgment. Paper No. 24.

II. Analysis

A. Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

    B. Exhaustion of Administrative Remedies

Defendants first assert that Plaintiff's case should be dismissed for failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly applies to Plaintiff's suit, and his complaint must be dismissed if he cannot show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement ensures that prisoners pursue administrative grievances through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative

review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Defendants contend that Plaintiff did not even begin the administrative process. Paper No. 24, Ex. 7. Plaintiff states that out of fear for his safety he did not file his ARP at the institutional level but rather filed directly with the Commissioner of Corrections, as permitted by Division of Corrections Directives. Paper No. 1. Defendants have not addressed this claim. Given the information provided, the Court will hold that Plaintiff has exhausted his "available" remedies by filing his administrative complaint directly with the Commissioner. *See Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000).

    C.    Excessive Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of

force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 559 U.S. __, Slip Op. No. 08-10914 (Feb. 22, 2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. As the Court noted in *Wilkens*, the issue is the nature of the force, not the extent of injury.

The uncontroverted records reveal that when Plaintiff was directed to be handcuffed so that another inmate could be moved to his cell, he refused to comply. By his own admission, Plaintiff indicates that he did not follow the orders of correctional officers regarding the procedure for another inmate to be moved to his cell because he the inmate was a non-Muslim and Plaintiff feared that he was a gang member. Records of the incident, the hearing officer's findings, and the declarations of the officers involved, medical records and photographs of the Plaintiff are consistent with the Defendants' contention that the Plaintiff's injuries were the result of a legitimate cell extraction that he vigorously resisted. In other words, the Defendants' evidence is that force was applied in a good faith effort to impose discipline. See *Hudson*, 503 U.S. at 6-7.

The only evidence that Defendants' exceeded the bounds of "good faith" and acted sadistically and maliciously is Plaintiff's Declaration, which asserts that the guards punched him repeatedly and twisted his head and testicles. It is well-established that a plaintiff's self-serving affidavit is not sufficient to withstand summary judgment. *See, e.g.*, *National Enters. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000). Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim of excessive force will be granted.

D.     Denial of Medical Care Claim

Defendants' motion for summary on Plaintiff's denial of medical care claim must also be granted. The parties agree Plaintiff was taken to the medical department soon after he was extracted from his cell. Correctional employees take no part in making medical decisions or judgment regarding inmates. All medical decisions are made by employees of Correctional Medical Services (CMS), the private contractor which provides health care to NBCI inmates. Correctional employees have no authority over CMS employees regarding medical treatment. Moreover, correctional employees are permitted to rely on the professional judgment of health care providers employed to care for inmates. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990). As it does not appear that the named correctional employees affirmatively prevented Plaintiff from receiving medical care, in any way interfered with Plaintiff's medical treatment, or were in any manner deliberately indifferent to Plaintiff's medical needs, their dispositive motion shall be granted as to his claim.

To prevail on an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of the medical defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). After the incident in Plaintiff's cell, Defendants escorted Plaintiff to the medical tier for evaluation. He was assessed by medical staff as suffering the results of pepper spray with mild swelling noted about his face. He was permitted to wash off the pepper spray, referred for follow up care with the physician, and an x-ray ordered. The x-ray showed no fractures to Plaintiff's face. Assuming Plaintiff was suffering from a serious medical need, there is

simply no evidence that medical employees failed to provide adequate care. To the contrary, it is undisputed that Plaintiff's injuries were treated on the day of the altercation and he was seen for follow up care in a timely manner. Plaintiff simply disagrees with the medical judgment of his health care providers. Such disagreement with a course of treatment is not a basis for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). Accordingly, Defendants' motion for summary judgment on Plaintiff's denial of medical care claim will be granted.

III. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted. A separate order follows.

July 15, 2010  _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge